UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

FILED
JUN -7 AM 9:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| JEREMY O. ORR, | ) | |
| Plaintiff, | ) | |
| vs. | ) | CV 00-J-1418-NW |
| CERRO WIRE & CABLE CO., INC., | ) ) | |
| Defendant. | ) ) | |

ENTERED
JUN 7 2001

### MEMORANDUM OPINION

This cause comes before this court on defendant's motion for summary judgment (doc. 30), defendant's motion to strike plaintiff's response (doc. 38), and plaintiff's motion to allow filing of summary judgment response out of time (doc. 39). Plaintiff's motion to allow filing of response (doc. 39) is **GRANTED**, defendant's motion to strike is **DENIED** (doc. 38). At issue in defendant's motion for summary judgment is whether the plaintiff has established a prima facie case of discrimination and if so, whether the plaintiff has met the burden of proving pretext.

### Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the

1

40

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issues of material fact. *Id.* at 323. The burden then shifts to the non-moving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477

U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

On motions for summary judgment, the court shall construe the evidence and factual inferences arising therefrom in the light most favorable to the non-moving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D.Ala.); citing *Anderson*, 477 U.S. at 251-252.

**Background**

Plaintiff worked at Cerro Wire and Cable Co., Inc., from August 4, 1997 until May 27, 1999. (Orr depo., p. 21; doc. 1 ¶ 8). Plaintiff was an Extruder Operator, which involves manning a machine that coats wire with insulation. (Orr depo., p. 7). Plaintiff was terminated on May 27, 1999. (doc. 1, ¶8).

On May 14, 1999, plaintiff became involved in an argument between another employee, Damon Mitchell, and that employee's supervisor, Patsy Key. (Orr depo., p. 109; Key depo., p. 40-41). Orr's involvement consisted of telling Key what job duties her employee Mitchell was responsible for. (Orr depo., p. 111). Orr was told to return to his department and machine. (*Id*; Key depo., p. 42). After this instruction, Orr spoke with Mitchell again as Mitchell was being escorted from the building. (Mitchell depo., p. 42; Orr depo., p. 111-112). Orr was suspended one day as a result of this incident. (Orr depo., p. 108, 112; Stewart depo., p. 114-115).

On May 25, 1999, plaintiff left his machine and entered the first aid room to treat a burn. (Orr depo., p. 42-43). Plaintiff after treating his burn with ointment, turned out the lights and sat down in the first aid room because it was cold out in the plant. (Orr depo., p. 86-87). Wayne Simmons, Maintenance department lead, and Aaron Johnson, shift supervisor for the Extruder department, found plaintiff in the first aid room. (Johnson depo., p. 122; Simmons depo., p. 98). Plaintiff was sitting in a dark room, with the back of his chair against the wall. (Johnson depo., p. 33, 38; Orr depo., p. 119). Orr had been in the first aid room for approximately ten minutes when he was discovered. (Herring

depo., p. 16).

Johnson decided plaintiff had been sleeping in the first aid room and sent him home. (Johnson depo., p. 38, 41-42). "The lights were off, he was away from his machine, it showed clear every sign to me he was getting away to sleep. I felt like it needed to be addressed by human sources (sic) and my boss, so I did what I knew was right at the time." (*Id.,* at p. 30). Johnson testified that it was his "sole decision" to send plaintiff home that night. (*Id.,* at p. 17, 67).

The next day, defendant's Human Resources Manager, Roger Stewart, investigated plaintiff's presence in the first aid room. (Stewart depo., p. 179). Stewart spoke with Johnson and Simmons. (*Id.,* at p. 179, 181, 184). Stewart also spoke with Stephen Campbell, who worked with plaintiff and who had told Simmons plaintiff had been leaving his machine to sleep. (*Id.,* at p. 207-208, 210, 212). Stewart discussed plaintiff's situation with Myron Bernard, Vice President of Manufacturing and Plant Manager, and Roger Brock, Production Manager. (*Id.,* at p. 74-75, 84, 179). Plaintiff was then terminated for leaving his machine to sleep. (*Id.,* at p. 191, 265-266).

Plaintiff filed a charge of discrimination with the EEOC on September 9, 1999. (doc. 1, Ex. 1). Plaintiff then filed this action alleging that he was terminated due to his race. (doc. 1).

## ANALYSIS

To make a prima facie case of discriminatory discharge, plaintiff must show (1) that he is a member of a protected class, (2) that he was qualified for his position, and (3)

5

"that the misconduct for which he was discharged was nearly identical to that engaged in by an employee outside the protected class whom the employer retained." *Nix v. WLCY Radio/Rahall Comm.,* 738 F.2d 1181, 1185 (11th Cir. 1984). Plaintiff must establish that he "suffered from a different application of work rules." *Spivey v. Beverly Enterprises, Inc.,* 196 F.3d 1309, 1313 (11th Cir. 1999). This can be accomplished by showing that plaintiff was "similarly situated to [a] differently treated employee. . ." *Abel v. Dubberly,* 210 F.3d 1334, 1339 (11th Cir. 2000).

    Plaintiff has failed to meet this burden. Plaintiff claims to have met this burden because he heard from another employee that a white male, John Smith, was caught sleeping away from his machine, but was not fired. However, plaintiff concedes in his brief that defendant's management was never aware of Smith sleeping away from his machine: "apparently management was never informed". (Plaintiff's brief p. 11). There is no similar situation between plaintiff being caught sitting in a dark room by his supervisor and hearsay comments that another employee left his machine to sleep but management did not find him. *See Abel v. Dubberly,* 210 F.3d 1334, 1338 (11th Cir. 2000) (Employee who never confessed to misplacing funds not proper comparator to plaintiff who did confess.); *Jones v. Gerwens,* 874 F.2d 1534 (11th Cir. 1989).

    Plaintiff argues that he should not have been fired because he was not actually sleeping in the first aid room. However whether plaintiff was actually asleep is not relevant. "[A]n employer may fire an employee for a good reason, a bad reason, a reason based in erroneous facts, or for no reason at all, as long as its action is not for a

discriminatory reason. *Abel v. Dubberly,* 210 F.3d 1334, 1339 n. 5 (11th Cir. 2000) quoting *Nix v. WLCY Radio/Rahall Comm.,* 738 F.2d 1181, 1187 (11th Cir. 1984).

Plaintiff also argues that because Wayne Simmons was one of the people who found plaintiff in the first aid room and thought plaintiff was sleeping, plaintiff has established discriminatory animus. According to plaintiff, Simmons had previously "commented on multiple occasions about blacks taking their white women and gave Mr. Orr a hard time for seeing a white woman . . . [and said] black boys were taking the plant over". (Plaintiff's brief p. 7). However plaintiff's supervisor, Johnson, also found plaintiff in the room and it was Johnson's sole decision to send plaintiff home and report the incident. (Johnson depo., p. 17, 67, 38, 41-42). "The lights were off, he was away from his machine, it showed clear every sign to me he was getting away to sleep. I felt like it needed to be addressed by human sources (sic) and my boss, so I did what I knew was right at the time." (*Id.,* at p. 30; ).

As discussed earlier, defendant's Human Resources Manager, Roger Stewart, then investigated plaintiff's situation. (Stewart depo., p. 179). Following that investigation, plaintiff was terminated for leaving his machine to sleep. (*Id.,* at p. 191, 265-266). Plaintiff does not dispute that he was in the first aid room with the lights off. *See Abel v. Dubberly,* 210 F.3d 1334, 1339 (11th Cir. 2000). Plaintiff argues that Simmons caused the management team to incorrectly assume plaintiff was sleeping, however there is no evidence to support this. According to plaintiff, one of the reasons Stewart fired plaintiff because Wayne Simmons told Stewart, plaintiff had slept on the job before. (Plaintiff's

7

brief p. 10). Plaintiff points to page 207 of Stewart's deposition as evidence of this proposition. Stewart testified on page 207 that Wayne Simmons had heard from Steve Campbell, plaintiff's co-worker, that plaintiff had been sneaking off to sleep. (Stewart depo.). Stewart then went and actually spoke with Campbell:

> [Campbell] mentioned to Wayne [Simmons] he thought that [plaintiff] might be sneaking off sleeping . . . and he really didn't know where [plaintiff] was going so he started watching [plaintiff]. [Campbell] add[ed] he was tired and [plaintiff] kept sneaking off and never once offered to give him a break . . . [A]sked Campbell how long [plaintiff] had been gone from the line when Wayne and Aaron caught him, Campbell said between 10 and 15 minutes.

(Stewart depo., p. 207-208). Plaintiff has failed to show how Mr. Simmons, with discriminatory intent, caused plaintiff's termination. *See Schoenfeld v. Babbit*, 168 F.3d 1257, 1268 (11th Cir. 1999).

Plaintiff has also failed to prove pretext. A defendant rebuts the presumption of discriminatory intent when it presents a legitimate nondiscriminatory reason for the alleged discriminatory action. *K. Standard, Jr., v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1332 (11th Cir. 1998). Once a legitimate reason is produced, plaintiff bears the burden "of proving the reason to be a pretext for unlawful discrimination. *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001). "In other words, [plaintiff] must provide sufficient evidence to allow a reasonable fact finder to conclude that the proffered reasons were not actually the motivation for [her demotion]." *K. Standard, Jr.*, 161 F.3d at 1332. Plaintiff can accomplish this "(1) by showing that the legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence,

8

discriminatory reasons more likely motivated the decision than the proffered reasons." *Id.*

Plaintiff argues that he has established pretext because defendant did not actually catch plaintiff sleeping. According to plaintiff, defendant merely believes he was attempting to sleep and because no one actually saw him with his eyes closed, his termination violated company policy against sleeping on the job. This semantic breakdown between actual sleep and sleep attempt does not prove pretext. Plaintiff literally argues that because his eyes were open after his supervisor opened the first aid room door and turned on the lights he could not be terminated for sleeping because no one saw him with his eyes closed. (Plaintiff's brief p. 5,6, 18). Plaintiff cites to deposition testimony for this eyes closed "rule" regarding sleeping. However this testimony consists of deponents attempting to explain and describe sleep to plaintiff's counsel who in turns argues plaintiff's case with the deponent when he or she states plaintiff was sleeping in the first aid room. For example this exchange took place during Wayne Simmons deposition:

> Q.  What are the other reasons? What did you observe to indicate that [plaintiff] was sleeping?
>
> A.  He was laid back with his eyes closed. Me and Aaron Johnson walked in and flipped on the lights and he raised up . . .
>
> . . .
>
> Q.  If he had been not leaning back but sitting up with his eyes closed when y'all went in there, would you still have thought – with his eyes open – would you still have thought he was sleeping?

> . . .
>
> Q. And if Mr. Orr had not been leaning back in his chair with his eyes closed apparently asleep and he had just been in there, you know, sitting up in the chair with his eyes open, would it have resulted in his termination in your experience with Cerro?
>
> A. Sitting back in the chair with his head back, that was not the whole issue here. The issue is that he's sitting back, he's away from his machine, he's got his back against the wall where he can't see his machine, he's got the lights off, the door shut, you know that's the issue.

(Simmons depo., p. 83-87). The employer does not have to be correct, reasonable, or even pleasant when terminating an employee as long as the employer is not discriminating. *Abel v. Dubberly,* 210 F.3d 1334, 1339 n. 5 (11th Cir. 2000) *quoting Nix v. WLCY Radio/Rahall Comm.,* 738 F.2d 1181, 1187 (11th Cir. 1984). There is no evidence that defendant violated its policy against sleeping on the job when it fired the plaintiff for what it believed to be sleeping on the job.

Plaintiff's next argument for pretext is that defendant has given inconsistent reasons for terminating the plaintiff. Defendant listed the reason for plaintiff's termination on an internal form as sleeping on the job. Defendant answered the EEOC and interrogatories by stating he was terminated "after his poor performance and failure to follow company policies and rules, including but not limited to leaving his work station for other than assigned duties without authorization, culminated in his being found away from his work station *asleep* or resting in a first aid room with the lights off." (Plaintiff's brief p. 18) (emphasis added). This "inconsistency" is not sufficient for pretext. *See Bechtel Construction Co. v. Secretary of Labor,* 50 F.3d 926, 934 (11th Cir. 1995)

(Conflicting reasons for termination - poor job performance and gung ho attitude - sufficient for pretext.).[1]

Plaintiff has failed to establish a prima facie case of race discrimination. Plaintiff has also failed to establish pretext. Thus no genuine issues of fact exist and defendant's motion for summary judgment (doc. 30) is due to be granted. Judgment shall be entered on behalf of the defendant.

**DONE** and **ORDERED** this __7__ day of June 2001.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

---

[1] Plaintiff also argues that because Wayne Simmons was involved and influenced the termination he has met the pretext burden. This issue has been addressed and there is no need to revisit it here except to say plaintiff has failed to establish pretext. The court also disagrees with plaintiff's argument that because he was not actually asleep a jury could conclude the defendant is not being truthful. Plaintiff does not deny he was in a darkened room only that he was not actually asleep, as discussed earlier plaintiff has failed to show how this distinction is discriminatory and this is not sufficient for pretext.